Good morning, Your Honors. Andy Weiner for the Commissioner of Internal Revenue in this case. I'd like to try to reserve three minutes for rebuttal. Just watch the clock. The question before the Court is whether a portion of taxpayers' gifts to charitable foundations were dependent upon a precedent event within the meaning of a Treasury regulation which disallows a deduction on that basis. The answer is yes, because taxpayers' gift of additional units were dependent upon an IRS audit and a successful challenge of the value the taxpayer reported on her return of the units as being too low. Taxpayer transferred units to charitable foundations and to private trusts for the benefit of her children. Is there any dispute with respect to the total amount of the transfer which included both interests? No, Your Honor. That was stipulated by the parties below. That's fixed. Right. Okay. And so when she transferred, she transferred, she made a single transfer of aggregate units going to two individuals, one being or, I'm sorry, two parties. One was a trust that was a private trust, noncharitable, for the benefit of her children. A portion of those units also went to a charitable foundation. And so there is no question that she would not be entitled to a charitable deduction for the full amount of the transfers. The question is, to the extent the charitable foundations were entitled to units. Now, the way that she transferred those units were such that if it was as final as the value of the units as finally determined for gift tax purposes exceeded the amount that taxpayer reported. But that only had to do with the valuation of the units. The amount of the total transfer was fixed and the amount set for the charitable foundation was also fixed in terms of dollars, was it not? It was fixed in terms of dollars as finally determined for gift tax purposes. You're correct, Your Honor. I guess I have a hard time understanding what the shouting is all about. The shout is that an amount as finally determined for gift tax purposes has a very distinct meaning. It means one of two things. It means the amount that the taxpayer reports on her return or it means the amount as challenged by the IRS and determined either because the taxpayer did not challenge the IRS's determination or because that is what the court ultimately hears the case and determines what that amount should be. But there are always adjustments to returns as filed, particularly in larger States, are there not? Well, as to whether there are always, I honestly don't know, Your Honor. But as to the ---- Enough. Yes. Certainly. It is not uncommon for a court to hear in a State tax case. But my point is this, is that this is not tantamount to fair market value, which is, I think, the basic underpinning of Your Honor's comment. Because here it is not that the trusts have a ---- it's not that the foundations have a right to a fair market value exceeding X dollars. It's that the foundations have a right to an amount as finally determined for gift tax purposes that exceed that. You know, if we lived in a perfect world, what poor old taxpayers would do, they would put this thing into a big computer in Washington that everybody agreed was going to give out the right number for valuation, right? They just put it in the big computer and they say, computer, you tell us the valuation, everybody agrees what it's going to be, and then you transfer my stock. So in the perfect world, it all happened instantaneously, and that would be okay, right? Can't object to that. It's not a perfect world, so we just take some time. And that's all we're involved in here is time, isn't it? Again, if I could go to the IRS and say, tell me the value of this, and that's what I'll use, that'd be peachy keen. That'd be closer to a perfect world, but that's not permitted either. I've got to guess the value of a thing that's not sold on the open market, got to guess the value, and then wait for the IRS to say, oh gosh, we don't agree with that value, we think it's higher or lower or whatever it is, right? And because that takes time, your position is the gift doesn't work. Right? I think that that leaves off one key element of this case, Your Honor, which is not that we don't all, when we file our tax return every year, deal with a certain amount of uncertainty as to things like valuation. For example, if you donate your old car or something, you declare a value. The IRS has every right to challenge that value and you deal with the consequences. Here is what happens, and what we suggest is very harmful and pernicious ultimately, is that the transaction changes based on the result of an IRS audit. What happens here is that taxpayers determine a value, they transfer the assets based on that determination, then the IRS comes and audits and determines that you know, in fact, you tried to transfer $5 million more of LLC units to the trusts as opposed to the charities, which is the equivalent of saying you took an unwarranted $5 million deduction where you didn't actually transfer those units, and suddenly the underlying transaction is adjusted to reflect a reality which didn't take place. To give charity even more than it would have had otherwise. Yes, but the thing is that ultimately it's true. Even more because the government has said, golly gee whiz guys. You got independent appraisals that didn't work. The foundation, the charity was independent. That didn't work. Nobody's been able to figure out what the government in its wisdom decided. You know, really I think that's worth more than you put down. And because you put down a lower value on your tax return or put down a lower value you don't get the benefit of the addition. One could make that argument, I suppose, but it's just, it's a policy kind of argument because the IRS doesn't want to waste its time. The IRS doesn't want to waste its time getting more money to charity. It wants to waste its time, it wants to use its time usefully to get more money for the government. True? That's what it comes to, isn't it? I think that one of the reasons why the IRS does audit returns is to increase tax revenue. And certainly while it is often the case that the IRS is portrayed as having an unlimited amount of resources to do whatever it wishes, it does not. And so, therefore, it does have to make priorities like every other being in this universe. And so, therefore, yes, in that respect, the fact that the IRS, I mean, one of the aspects of this defined value transfer clause is to eliminate any proceeds that could follow from the misvaluation by taxpayer. I would, I would. You can face this on death transfers all the time, right? Yes, however, death transfers. And deal with it, I might say. Transfers in the estate tax context bring up certainly different sets of factors that weigh in on whether these types of clauses are legitimate or not. In a death context, you obviously don't know when you're going to die and you don't know the fluctuating values of what you're giving away. And so, therefore, in order to take maximum advantage of certain congressional deductions that Congress has bestowed upon taxpayers, the IRS does allow this. Of course, you could easily say, you know, guys, put down your values for estate tax purposes. Go out and get your appraisals. Put them down. And that's the number that's going to be used. And then the IRS won't have to waste its time because if it decides that you put down too low a value, which is not unusual, if it decides your value is too low, then it gets the benefit of the tax, right? So if I do a marital gift or a charitable gift. And if the IRS decides the value is too low? Yeah. Well, I mean, in the marital deduction context, no. You would be able to get an increased marital. You would be able to get the way the marital deduction component works is, and again, because of the particular context in which you have unavoidable uncertainty as to the time and the value of what you are giving away, the IRS makes it such that you can take advantage of your unified exemption and then, only then, give to your surviving spouse so as to take maximum advantage of the benefit, however, of each of those two benefits. However, in this case, what you have is a very different situation. You have an inter vivos gift in which, first of all, what we're talking about is underlying asset of UPS, publicly traded stock, which was then put into an LLC for various valuation benefits, as well as in order to, as Taxpayer testified, to involve the rest of her family in the management of that asset. And then a valuation was ordered, but it was timed such that it was only going to be finalized after the actual transfers were made. Suppose there were no audit. And how would the parties then, so the parties collaborated? Suppose there were no audit in this case. Obviously, there was one and there was an adjustment made. But suppose there were no audit. You mentioned earlier you don't audit every return. Suppose this one we're not auditing. Oh, I'm sorry, Your Honor. I was stuck on valuation. If there was no audit, I'll tell you exactly what would happen. What would happen is the taxpayer would have got the benefit of giving $5 million more of her lifetime gift exemption, of her unified exemption to her trust, and the foundations would have received exactly what they initially received, which was 1,800 LLC units instead of 6,000, which they ultimately received after the IRS audit. Does the IRS have any incentive to audit a situation like this in which they think that the value of the LLC unit has been undervalued? Has been undervalued. That is, that they didn't take as large a deduction for charitable contribution as they could have. In that case, you probably really don't have any incentive to do that, and the taxpayer may have paid more, but may not have gotten all the benefits from the deduction laws that they could have. So, I mean, the problem here is that you have an incentive to audit in one case, but you don't have an incentive to audit in another case, even if you think that in both cases that the number, that the initial valuation of the LLC unit was wrong. I think in response to your question, Your Honor, is that certainly everybody has a set of interests that they bring to this transaction, and the taxpayer has an interest to give as much to her, the children's trust as possible, and then to make sure that the foundation receives, the foundations receive enough such that the transaction is tax-free. On its face, the transfers were designed such that she would give the maximum to her children that could be tax-free. It says it. And so, therefore, There's nothing illegal about that. No, absolutely. There is nothing illegitimate about the fact that she gives away a tranche of units for two different beneficiaries, that she gives them based on a defined value. The pernicious aspect of this is the adjustment clause that rejiggers the whole thing when they don't like the results. Back to my earlier question, suppose there were no audit and, therefore, no adjustment. The clause is totally irrelevant. Correct, Your Honor. But the allocations of the units are totally different. In fact, the foundations receive two and a half times more units than what they initially received. But what is fixed is that the taxpayer has announced from the outset that she intends to give to her children the maximum permitted by law, and the remainder will go to the charity. And that value is fixed. We can put a dollar figure on that. What we don't know, where the uncertainty is, is we don't know how much to value the LLC units at this point, because they are not being traded in a public market. So the taxpayer has given its best estimate and simply has said, if the IRS has got a different view of what the estimate is, I'm still telling you I want to give the maximum to my children permitted by law, and everything else is to go to charity. So that value seems to me to be fixed from the outset. It's certainly fixed in theory. I would say two things in response, and I'd like to at least keep one minute for rebuttal if there are no more questions. The two things is that, one, that the value is fixed only from the perspective of after an audit. As to the value as to when the transfers were initially made are fixed by taxpayer's return. The foundations have no right to challenge what somebody else puts on their return. And so in that respect, and the other thing that I'd like to say is this, is that the that argument is in direct contravention of the regulation, which says that you are only entitled to a charitable deduction, effectively, of amounts that the charity is assured of receiving. It's a longstanding principle in tax law. And the way that that happened, the taxpayer in this case did not intend to give all 6,000 units to the charity. She only intended to give them as a alternative to having the transfers taxed in the first place. If I could save. Scalia. You've got 20 seconds in the bank, counsel. We'll let you have them a little later. Mr. Porter. Porter. Thank you, Your Honor. May it please the Court. I want to address one thing right up front, which is the tax court's finding in this case that Ann Petter made these transfers in good faith and consistent with the goal, congressional goal, of encouraging gifts to charity. That finding itself has not been challenged by the government in this case. Now, fundamentally, when we're looking at the tax treatment of this transaction, we have to go back to what I call transfer tax fundamentals, which is the value of the gifts made by Mrs. Petter in 2002 are based on the property rights transferred under State law. What did she transfer under the transfer agreements? And likewise, Mrs. Petter is entitled to a deduction for the value of property passing to charity under the transfer agreements. And the charitable deduction is measured by the rights transferred to charity under State law. And in this case, if we look at the transfers on March 22 and March 25 in the four corners of those transfer agreements, what she transferred was very clear. She transferred a specific dollar amount of units to trust for the benefit of her children, everything else to charity, the Seattle Foundation and the Kitsap Foundation. And the record at trial demonstrates that this has done a substantial amount of good in the Seattle area. Distributions as of the date of trial, which was 2008, have been over $800,000 out to the Seattle community. We're only seeking a charitable deduction for the value of the units passing to charity under the transfer agreements. Now, the government's raised two arguments in their briefing. One is that the transfers to charity by Mrs. Petter were contingent on events. But the bottom line is if we look at the four corners of those transfer agreements, they were not contingent on any event occurring after the transfer agreements were signed. Well, let me ask you the same question I asked opposing counsel. Suppose because of whatever administrative policy or pure chance, there never was an audit in this case. Then what? Then the really, in my view, there are two issues. One is if the charities are happy, which they were in this case with the Moss Adams appraisal. It was an appraisal from a highly reputable firm that did work for both taxpayers and the Internal Revenue Service. There's no audit, then the value is fixed. Mrs. Petter has signed a gift tax return. That return satisfies the statute of limitations, and the value is fixed, and everyone's happy based on that initial allocation. There could be, it's not the case in this proceeding, but there could be if the charity was unhappy with the Moss Adams appraisal, felt like Mrs. Petter and her children had intentionally low-balled, there could be a claim that the charity has. Recall that Mrs. Petter signs that gift tax return that's subsumed within the transfer agreements because the value is based on values as finally determined for gift tax purposes. She signs that gift tax return under penalties of perjury, that she's basically made a good faith valuation analysis. And if the charity thinks maybe there's some collusion going on here, maybe Mrs. Petter and her advisors have low-balled intentionally this appraisal, they have state law property contract rights, breach of contract, breach of duty of good faith and fair dealing, and they may have fraud claims. And so they have rights to, and frankly obligations, as the tax court pointed out, under both federal and state law, if they think there was some shady dealing going on to enforce their rights. But that's not the case here. If they do that, what's the ultimate tax consequence of that? The ultimate tax consequence may likely be that if additional units go to charity, then Mrs. Petter gets the charitable deduction for that. Now, if I understand, at least part of the government's, buried in the government's argument would be something like this. Let's say you are really super neat people. Okay? Super what? You're great people. Everything's above board. Everything's cool. I guess there are things like estate planning associations, like the National Association, used to be, these trust and estates consultancy. It's going to be pretty well known that here's a really neat way you can do it, thing you can do, and then what's the incentive of the IRS to ever audit these things? Well, that's one of the questions I asked Attorney Kimmel, the IRS examining agent at trial. Because these types of clauses, this isn't the first time this clause has ever been used in estate planning. These clauses have been in existence for decades. We've got revenue rulings, one of them we cited in our brief going back in 1972, which uses language almost identical to the language used in Mrs. Petter's transfer agreements. They're used in the charitable deduction area. They're used in the marital deduction area. They're used in determining the grantor retained annuity trust transfers under Section 2702. They're used for purposes of allocating generation skipping tax exemption. All have language based on values as finally determined for transfer tax purposes. All, under the government's theory, would be contingent transfers. And I want to address something counsel pointed out. There's no distinction in these regulations between transfers that occur at death and transfers that occur inter vivos, during lifetime. The revenue ruling 72-395 deals with a lifetime transfer. Charitable deduction regulations, Section 664, for income tax purposes, lifetime transfer. Marital deduction transfers can occur during life or at death. And so these transactions, these formula clauses are not new at all. And if we look snapshot-like on the valuation date, which is what the tax law teaches us to do, that's what the Christensen case said, that's what the McCord case out of the Fifth Circuit said, if we look at the four corners of the transfer agreement, it's very clear that what Mrs. Petter did was transferred a specific dollar amount of units to trust for children and the rest to charity. And the only question to be determined, as the tax court found in this case, was the value of those units. Fixed rights transferred under the transfer agreement with uncertain value. Was your answer to me, not much incentive, but so what? You know, Your Honor, I turned to you. I asked a specific question and you gave me a very long answer, but it sounded like, well, maybe not much, but so what. Well, I guess it's not really so what. Because the government has had these clauses for years. They still audit returns. I asked Attorney Kimball if she continued to audit first-to-die spousal returns, where you have a specific amount going to what we call a bypass trust, which is designed to capture the available unified credit for estate tax and everything else going to. The marital deduction trust or the spouse outright. And that clause is based on values as finally determined. I asked Attorney Kimball if she ever audited first-to-die spousal estates. She said, sure. And I said, and it's in the record. And I said, is that true even if there's no additional tax raised? And she said, yes, that's true. GST allocations, they're audited all the time. Charitable deduction allocations, they're audited all the time. Grat transactions, audited all the time, even though additional tax might not be raised. Because the government's role, as the tax court found in this case and the Eighth Circuit determined in the Christensen's case, is not just to raise the most tax revenue possible. It is to administer the tax laws as Congress writes them. And one of the things Congress did was permitted a deduction for property passing to charity. Now, with respect to the public policy argument, as an initial matter, policy is in favor of encouraging gifts to charity. And the tax court specifically found that Mrs. Petter's transfers were in good faith and consistent with the congressional goal of encouraging gifts to charity. And under the Tellyer case, the commissioner bears a heavy burden. They have to show that allowing the deduction in this case would frustrate sharply defined national policies prescribing particular types of conduct, and that frustration must be severe and immediate. And I think fundamentally it's disingenuous for the commissioner to argue in this case that Mrs. Petter's formula clause, which is so similar to the many formula clauses that we've just talked about, somehow violates public policy when the commissioner has allowed and encouraged the use of these similar formulas based on values that's finally determined for decades. And in each case, whether it's the charitable deduction regulations, whether it's the marital deduction planning, whether it's the generation skipping tax, the formulaic adjustment is only made if property is determined through audit to be different than originally reported. And as Attorney Kimmel testified at trial, the service audits those returns. And the very existence of these favored or allowed formula clauses, which tend to discourage under the commissioner's theory audits and could affect litigation outcomes, belies the commissioner's assertion that there's some well-established public policy against using formulas. Our view is that Proctor is one, as we stated in our brief, not good law today. But even if it is, the formula in this case didn't change the nature of the underlying transaction and doesn't get back any units. There's not an undoing of the transaction. And as the tax court held, this doesn't cause them to render a moot opinion. The bottom line is that Ann Petter had a substantial amount of charitable intent in this case. And that charitable intent has been carried forward. The clause that she used was unambiguous and was not subject to any contingency. It's frankly no different than the clauses that the government has blessed in a variety of contexts. And therefore, we would request the court to affirm the tax court's decision and to allow a charitable deduction based on the values of the properties passing to charities, the charity as finally determined for gift tax purposes. Thank you, counsel. Mr. Weiner, you have some reserve time. Not a lot, but a little. That's a 22nd argument, Your Honor. The bottom line is that this, the additional shares were contingent on an IRS audit, which is directly contrary to the plain language of the regulation. Taxpayer undervalued her units by 40 percent. Counsel, if you, if we ultimately were to disagree with you today, can the IRS simply change its regulation to address this more specifically? Does it require new legislation or can you do so by regulation? I would think, Your Honor, that you could do so by regulation. However, I did check the IRS business plan, which is something they put out as far as priority. It is not, it is, it does not appear on there, Your Honor. Now, that is, that is to say that right now the IRS has hooked, has hooked the wagon to a court to recognize that this is a contingent gift. Now, taxpayers undervalued the gift by 40 percent. Now, and that's not to say that she did not have a charitable intent, but let's face it. If this is blessed by the court, do you not think that everybody who thinks that they can unwind an IRS determination that there is tax liability in a gift context is going to take advantage of the exact? If the IRS's only incentive to audit these kinds of things is to increase revenue going into the Federal coffers, then the IRS is probably going to have to rethink whether this is what it wants to do. On the other hand, if the IRS serves a kind of disciplining function on taxpayers in which you will force a taxpayer to both litigate the audit and incur additional expenses, and in the end lose money which they're going to have to give to a charity, which is a great cause for the government to be involved in, then it seems to me that there's lots of incentive for the government to be involved in auditing these kinds of transactions. If I could, I understand that I'm way over, Your Honor, but if I could have 20 seconds to respond. My answer is this, is that, is that the IRS is not, certainly the IRS's mandate is much broader than just augmenting tax revenue. It's something that we recognized in our brief and we said so. However, what the IRS is not in the business of doing is telling taxpayers how to structure their transactions tax-free post hoc and let them go back and redo it again. Now, that is allowed in very specific contexts. I would submit that, Your Honor, that with all due respect, Mr. Porter has inverted the regulatory scheme here. The contingent gifts are disallowed. They are allowed in narrow exceptions for reasons that we explained in our brief. They are not allowed generally just by virtue of the fact that they appear five or six times in the regulation. And so, therefore, what we see, we would recommend the Court reverse the tax court's decision, which did not even address the regulation in which we argued requires that the Court disallow. Scalia. One further question. Do you disagree with Mr. Porter's argument that if there were no audit here and the eventual evaluations were so distorted that the foundation felt that they ought to do so? No, Your Honor. I respectfully disagree with opposing counsel for this reason, is that the foundations got what they were entitled to, which was the amount above a value as finally determined for gift tax purposes. They have no ability to assert that amount. However you're re-arguing the merits of the case. I was, I was, I posited that there were, that there was no evaluation. There was no audit. Oh, I'm sorry. The answer is then that no, as far as what the tax court asserted, as far as a duty of care and a duty of good faith, those are inapplicable here because they have to do with the business of the LLC, not the allocation of units. As far as a duty of care by the foundations, the heads of the foundations, they got what they were entitled to. They weren't entitled to anything more. And so, therefore, no, that we do not, if, if Ms. Petter had decided that they were in fact, after the, after the appraisal had come out, that they were in fact entitled to more, it was only Ms. Petter's generosity that would have led to them actually  They had no right to it. Thank you, Your Honor. The case just argued will be submitted for decision and the Court will adjourn.
judges: O'scannlain, Fernandez, Bybee